IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNY STEWARD, a.k.a. HARRY DARNELL HOWARD,<br><br>Petitioner,<br><br>v.<br><br>STUART SHERMAN,<br><br>Respondent. | No. C 15-0667 WHA (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS; ON PENDING MOTIONS**<br><br>(Dkt. Nos. 28, 41, 42, 48, 49, 50, 51, 52, 63) |

## INTRODUCTION

This is a habeas case brought pro se by a state prisoner under 28 U.S.C. 2254 challenging his state court conviction and sentence. Respondent has filed a motion to dismiss the petition as untimely. After initially filing a traverse (ECF No. 33), petitioner filed a motion to amend his opposition to the motion to dismiss (ECF No. 34), which is construed and accepted as an amended opposition. Both have been considered. Respondent has filed a reply brief, and petitioner filed a response to that reply (ECF No. 40). Both parties have filed extensive exhibits. After careful consideration of the record and for the reasons discussed below, the motion to dismiss is **GRANTED** and the case is **DISMISSED**.

## STATEMENT

The following procedural background is not disputed by the parties:

In 2001, a jury in Santa Clara County Superior Court convicted petitioner of first-degree burglary, receiving stolen property, petty theft with a prior conviction, five counts of forgery, and four counts of using an altered, stolen or counterfeit credit card. The jury also found that he had four "strike" priors, and he was sentenced under California's "Three Strikes Law" to a term

1  of 90 years to life in state prison. In 2002, he appealed the judgment to the California Court of
2  appeal, and on April 30, 2003, the judgment was affirmed. On June 10, 2003, petitioner's
3  appellate counsel filed a petition for review in the California Supreme Court, but it was denied
4  as untimely and the remittitur issued on July 1, 2003.

Petitioner's first state habeas petition was filed in and denied by the Santa Clara County Superior Court while his direct appeal was pending in the California Court of Appeal (Resp. Exh. R at 3). Petitioner's second state habeas petition was filed in the Santa Clara County Superior Court in August 2003, and it was denied on an unknown date (*ibid.*; Resp. Br. 2 n.2). Petitioner did not appeal the denial of these petitions (*ibid.*). On June 24, 2014, petitioner filed a third habeas petition in the superior court, and it was denied on July 31, 2014, as repetitious, untimely and meritless (Resp. Exh. R at 10, 14). He filed a fourth habeas petition on September 24, 2014, in the superior court, and it was also denied as untimely, lacking merit, and repetitious on November 3, 2014 (*id.* 89, 2-6).

Petitioner filed the instant petition on February 5, 2015.

**ANALYSIS**

I. MOTION TO DISMISS

The statute of limitations is codified at 28 U.S.C. 2244(d). Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. 28 U.S.C. 2244(d)(2).

Petitioner's judgment became final under Section 2244(d)(1)(A) on July 1, 2003, when

the California Supreme Court issued the remittitur after denying petitioner permission to file a late appeal. The limitations period expired one year later, on July 1, 2004. Under the "mailbox rule" the instant petition is deemed filed when it was given to prison authorities for filing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The instant petition was presumably given to prison officials on the date it was signed — January 23, 2015 — which is over ten and a half years after the limitations period expired. Absent tolling for that amount of time, the instant petition is untimely.

Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. 28 U.S.C. 2244(d)(2). Petitioner's first state habeas petition does not toll the limitations period because it was filed and denied while the direct appeal was still pending, and therefore the limitations period had not yet begun to run. Petitioner's second state habeas petition, filed in August 2003, would appear to toll the limitations period. The date that petition was denied is not known, but it is assumed that it was not pending for longer than the statutory limit of 60 days. *See* Cal. R. Ct. 4.551(a)(3)(A) (allowing superior court up to 60 days to rule on a habeas petition). In any event, it is safely assumed that the petition was not pending for long enough to provide over ten and a half years of tolling. Petitioner's final two state habeas petitions do not toll the limitations period under Section 2244(d)(2) for two reasons: first, they were denied as untimely, *see Carey v. Saffold*, 536 U.S. 214, 226 (2002) (when California court denies state habeas petition as untimely, there is no tolling under Section 2244(d)(2)), and secondly, they were filed long after the limitations period had already expired, *see Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that once AEDPA's limitations period has run, state habeas petition cannot revive it). Accordingly, tolling under Section 2244(d)(2) does not render the instant petition timely.

Petitioner argues that he is entitled to equitable tolling because he had mental health problems for which he was receiving medication for 11 years (Pet. 7). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."

3

*Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). Eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:

> (1) First, a petitioner must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (citations and footnote omitted). In practice, to evaluate whether a petitioner is entitled to equitable tolling due to mental impairment, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements. *Id.* at 1100-01.

An evidentiary hearing is not required to determine whether to allow equitable tolling on the grounds of mental impairment where the petitioner's pertinent medical and prison records are submitted by the parties. *See Roberts v. Marshall*, 627, F.3d 768, 773 (9th Cir. 2010) (finding no equitable tolling for mental impairment without conducting evidentiary hearing and based on review of records submitted with petition); *see also Orthel v. Yates*, 795 F.3d, 939 (9th Cir. 2015) (denying equitable tolling without evidentiary hearing based on review of voluminous mental health and prison records submitted by respondent). Here, the parties have submitted petitioner's voluminous mental health and prison records for the relevant period, i.e. between the time he was convicted in 2001 and when he filed the instant petition in 2015 (Resp. Exhs. A-Q). Because all of the pertinent medical and prison records have been submitted, the *Bills* equitable tolling analysis can be conducted without an evidentiary hearing.

4

1    California prisoners are provided mental health care at four levels based on their
2 functionality, which includes their severity of symptoms, ability to conduct self-care and
3 participate in daily activities, and general adaptation to the prison environment, and as reflected
4 by their Global Assessment Functioning ("GAF") score from 1-100.  *See Williams v. Keenan*,
5 2009 U.S. Dist. LEXIS 80563 *2-3 (E.D. Cal. 2009) (citing prison regulations).  The two least
6 severe levels are the Correctional Clinical Case Management System ("CCCMS"), in which
7 inmates have a GAF score of 50 or higher and live in the general population while they receive
8 medication and other treatment, and the Enhanced Outpatient Program ("EOP"), which is a
9 short-term clinical program with separate housing for inmates with a GAF score between 30 and
10 50.  *Ibid.*  The higher levels are Mental Crisis Bed, a ten-day stay for inmates in a mental health
11 crisis, and the Department of Mental Health ("DMH"), a 24-hour nursing and psychiatric care in
12 a hospital; they are both for inmates whose GAF score is below 30.  *Ibid.*

13    Petitioner's medical and other prison records show that he was treated for auditory
14 hallucinations, depression and suicidal ideation.  Between 2003 (when the limitations period
15 began to run) and 2015 (when the instant petition was filed), petitioner was primarily at the
16 CCCMS level of care with occasional placement in the EOP, and had a GAF score ranging from
17 45 to the low 60s (Resp. Exh. I at 91, 97-98, 108, 110-17, 123, 125, 132, 136-38).  Throughout
18 this period, his cognitive function was normal, and he was consistently described as having
19 organized thinking, articulate, oriented, able to effectively ask appropriate questions, give
20 appropriate answers, and summarize conversations at his quarterly reviews (Resp. Exh. K at 20,
21 21, 30-40, 44, 54-55, 71-73, 75, 82-86, 89, 91-92, 97-101, 114, 128-31, 133, 144-51, 153, 164,
22 167; Exh. J. at 713, 722, 726, 730, 735, 740-41, 745, 747, 750, 760, 765, 771-72, 778-86, 792;
23 Exh. Q at 210, 426).

24    Petitioner prepared and filed two pro se state court habeas petitions between 2002 and
25 2003, which demonstrates that he was able to understand and prepare a habeas petition before
26 the limitations period had expired.  Between 2003 and 2011, he repeatedly discussed his legal
27 claims and the need to challenge his conviction and sentence in court (Resp. Exh. K at 167; Exh.
28 J at 664, 668, 678, 730, 748, 772, 780), and his records document his awareness of his legal

5

1   claims in the years that followed (Resp. Exh. K at 63, 65, 75, 80, 115, 152). He also prepared
2   and filed two more state habeas petitions in 2014, and two administrative grievances regarding
3   medical care in 2014 (Resp. Exhs. R, Q at 424-33). In addition, his functionality in prison is
4   further demonstrated by the fact that while in prison he completed his high school equivalency
5   degree and held a job in prison. The record shows that he was literate and able to file a petition
6   before completing the high school equivalency degree, as demonstrated by the two pro se state
7   habeas petitions he had filed between 2002 and 2003.

8         Petitioner's auditory hallucinations — which are described as derogatory rather than
9   command-based — began in the late 1980s, when petitioner was 28 years old and using various
10  drugs (Resp. Exh. K at 111, 169, 177). Since he has been in custody on the present offenses, the
11  hallucinations have been successfully treated with medication, intermittent insofar as petitioner
12  reported going lengthy periods — including up to one year — without any, and did not have
13  cognitive side effects (*id.* 21, 54, 68, 87, 111-15, 133, 149, 158, ). Apart from an 11-month
14  period between October 2005 and September 2006, he was treated at the CCCMS and EOP
15  levels of care; during those 11 months, he refused the medication for his hallucinations and was
16  involuntarily medicated at the DMH because the increased hallucinations made him a danger to
17  himself or others (Resp. Exh. I at 148, 163, 183).

18        Petitioner was also diagnosed in prison with depression stemming from his prison
19  sentence and "family issues" (*id.* 97). There are records of suicide attempts during past
20  incarceration periods, and he reports attempting suicide during the present incarceration period
21  (Resp. Exh. K at 34; Exh. Q at 257).

22        In *Roberts v. Marshall*, equitable tolling was not warranted because the petitioner's
23  mental health records showed that he was medicated for severe psychotic depression disorder,
24  but he had normal mental functions, his appearance, behavior, mood, speech, appetite, sleep and
25  affect were within normal limits, he was not delusional, and had normal insight and judgment.
26  627 F.3d 768, 770 (9th Cir. 2010). In *Orthel v. Yates*, the Ninth Circuit affirming the dismissal
27  of petition where substantial evidence showed that — despite fluctuations in mental health —
28  petitioner possessed sufficient competence and capability in the year following the date on which

6

1  the state court judgment became final as well as sufficient competence during much of the
2  eleven-year span between finality of judgment and filing of his federal petition. 795 F.3d 935,
3  941 (9th Cir. 2015).

4  Similarly, here, petitioner's medical and other prison records show that despite his mental
5  health problems, and apart from the 11-months when he refused medication, he possessed
6  sufficient competence between 2003 and 2015 to understand the need to timely file a federal
7  petition and to be able to prepare and file such a petition. His cognitive abilities were normal or
8  better than normal, he had prepared and filed state habeas petitions as early as 2002 and 2003, he
9  had a job and earned a degree in prison, he demonstrated that he understood the nature of a legal
10 deadline and his need to appeal or challenge his criminal judgment, and he filed further state
11 habeas petitions and administrative grievances in 2014. His auditory hallucinations, which did
12 not in any event interfere with his cognitive abilities, were controlled by medication and he went
13 long periods without experiencing them at all. There is also no evidence that his depression and
14 occasional suicidal ideation — or the medication he was provided to address for those problems
15 — impaired his understanding or ability to prepare and file a federal petition. In addition, there
16 is no evidence of any diligence in pursuing his claims for over ten years, until 2014, when he
17 finally filed two habeas petitions in the state superior court. As a result, while there may be
18 grounds for tolling the limitations period for 11 months when petitioner was involuntarily
19 medicated, there are approximately ten years of delay during which there is substantial evidence
20 that petitioner was more than capable of understanding and filing a federal habeas petition.

21 Because the instant petition was filed over ten years after the limitations period, and the
22 record shows grounds for statutory tolling and equitable tolling for a period that falls far short of
23 that — a few months of statutory tolling in 2003 and 11 months of equitable tolling in 2005 and
24 2006 — the instant petition must be dismissed as untimely.

25 II.   OTHER MOTIONS

26 Petitioner's motion for default judgment (ECF No. 37) on the grounds that respondent
27 did not address the merits of petitioner's claims in the motion to dismiss is **DENIED**. Petitioner's
28 motion for sanctions (ECF No. 41) because respondent sought a venue transfer ex parte and

7

...

lodged exhibits is **DENIED** because respondent's actions are allowed.

The motion for subpoenas of transcripts and documents from his trial and appellate proceedings (ECF No. 42) is **DENIED** as moot because those materials allegedly relate to the merits and not the timeliness of the petition.

Petitioner's motion for leave to file an amendment to this petition (ECF Nos. 45, 48) is **DENIED** because money damages may not be obtained via a federal habeas petition.

Petitioner's motion to strike respondent's exhibits (ECF No. 49) is **DENIED** because he has not shown that they were irrelevant or otherwise improper.

Petitioner's "ex parte motion" and motion for a "more definite statement" (ECF Nos. 50, 51) are **DENIED** insofar as they challenge the motion to dismiss on grounds that do not alter the conclusion reached above. Petitioner's renewed request for appointment of counsel is also denied as he has been capable of adequately presenting his arguments and claims.

Petitioner's motion for an extension of time (ECF No. 52) is **DENIED** as moot because he does not have a deadline to extend, nor does he identify what deadline he seeks to extend.

Petitioner's motion for leave to proceed in forma pauperis (ECF No. 63) is **DENIED** as unnecessary.

## CONCLUSION

For the foregoing reasons, respondent's motion to dismiss is **GRANTED** and the petition is **DISMISSED**. The other pending motions are **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that a reasonable jurist would find the dismissal of his petition debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June   14  , 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8